### PITCHER & REMSEN versus PATRICK'S ADM'RS.

The fact of lines being drawn through the face of a bond, or note, is to be re-garded as presumptive evidence of its being satisfied or cancelled.

But such fact is proper for the determination of a jury, before whom either party can legally explain the circumstances under which the marks were made.

In error from Tuskaloosa Circuit Court. Patrick's representatives brought an action of debt against the plaintiffs in error, to recover the amount of a sealed note. The instrument was made payable to Patrick, in his life-time; and when produced in evidence, on the trial, had two lines drawn through the body of it; which, it was contended, was *prima facie* evidence of its being paid—and so, not evidence of the demand, against the defendants.

The Court, as appeared by a bill of exceptions, permitted the note to go to the jury, as evidence; but instructed them that the lines drawn across the note, were not sufficient evidence that the same was paid.

Verdict for plaintiff below, and writ of error.

*Baylor*, for Plaintiffs—*Aikin, contra.*

SAFFOLD, J.—The action was debt, brought by the defendants against the plaintiffs in error, on a note under seal, drawn by Pitcher & Remsen, payable to Patrick, in his life-time, for three hundred dollars. The pleas were payment, and set-off, and failure of consideration. The record shews there had been a previous trial, when Remsen offered an account against Patrick in evidence, as a set-off, for the rejection of which the judgment then rendered, was reversed on error.

On the second trial, which we are now to revise, the note was offered in evidence, when, as appears from the bill of exceptions, two lines had been drawn, with pen and ink, transversely, through the face of the note, crossing each other, and extending over the entire instrument, including the names of the makers. The defendants' counsel objected to the note as evidence, and contended that the cross lines so drawn was sufficient evidence that the note had been cancelled or paid; which objection the Court overruled, and suffered the note to go to the jury as evidence of said debt, " and charged the jury that said crossing was not sufficient evidence of cancelling or payment."

In the decision and charge mentioned, the Circuit Court is supposed to have erred.

That the note, crossed as it was, remained admissible evidence and proper for the consideration of the jury, either with or without explanation, I think sufficiently clear. The record shews nothing contesting the facts, that the present plaintiffs executed the

instrument, and that the same was originally valid, according to its import : unless it could be inferred that the instrument having been cancelled at the time it was drawn, was never intended or delivered as a bond. This, however, under the issue mentioned, can not be presumed ; for had such been the case, the obligors, instead of the implied admission of the execution, arising from their pleas, should have availed themselves of the plea of *non est factum.* Could the cross lines be regarded as an *erasure* or *interlineation,* in legal parlance, the defence ought to have been the same ; but it can not be so considered : the effect of either would be to vary the reading, which these lines had no tendency to produce. The law is held to be, that, among the variety of other matters of defence, under the plea of *non est factum,* the defendant may prove, " that the deed was cancelled before the plea ; that a material *erasure* was made in the deed, or that the seal was torn off before the plea ; but this, it seems, is but presumptive evidence of such an act on the part of the obligee as will cancel the deed ; for the latter may shew that the seal was torn off by accident; or that the alteration was made by a stranger, in a point not material, and without his privity. But an alteration by the obligee himself, even in an immaterial point, will, it is said, avoid the deed."[a]

[a] 2 Starkie, 480 and authorities cited there.

As the cancelling or crossing this paper, has not the effect to vary its contents, and as it is presumed from the pleas to have been done since the issue was joined, the argument, on the part of the defendant in error, can not prevail, which insists that this ground of defence can only be claimed under the plea of *non est factum.*

It is also contended, on the authority of *Smith* vs. [a4East, 585] *Woodward,* referred to in 2 *Starkie,* 476, *note b*— " that if the seal be broken off in Court, the deed shall be enrolled for the benefit of the parties; for, where any thing is impaired whilst in the custody of the law, it is restored by the benignity of the law as far as possible." If it be true, that, after a deed has been pleaded with a profert, it is, according to the English practice, considered in the custody of the law, we can not disregard the well known fact, that the more common practice with us, is otherwise. The usual course here, is understood to be, that the plaintiff's counsel retains possession of the evidence of his demand until the trial comes on; and even, if a new trial be granted afterwards, the instrument, whether remaining in the files of the office, or not, becomes again subject to his control. How far craving *oyer* of the bond by the defendant, and having it spread on the record, would abridge this authority and control of the plaintiff, it is unnecessary to enquire, as in this case there was no such claim. It is clear the defendant can, at no time, exercise any legitimate power over the plaintiff's evidence of debt, until it is surrendered to him. If, therefore, at any time before a final trial, the note or bond on which the action has been brought, undergo any alteration, or receive any impression, indicating its destruction or satisfaction, it would appear to be but a necessary and reasonable requisition on the plaintiff that he should afford the explanation. If the act done was the result of mistake or accident; or if any effect was designed by it different from its ordinary import, he alone must be presumed to know the circumstances, and to possess the means of explanation.

As a case supporting this doctrine of presumption, may be noticed a New-Hampshire decision—*Chesley* vs. *Frost.*[a] There it was held, that a material alteration of a deed of land, while in the possession of the grantee, is *prima facie*, fraudulent, and is presumed to have been made by the grantee himself.[b]

An early decision of this Court, (*Tubb* vs. *Madding,*[c]) has some application to the question involved in this case. Tubb sued on a note on which credits appeared to have been endorsed, which had been *erased.* It did not appear that any evidence of explanation was offered by either party. On error, it was ruled that the Circuit Court should have left it to the jury to determine, whether from the evidence and circumstances, the credits had been entered by mistake, or fraudulently erased, and to what amount payment had been made: that, though the credits remained legible, the Circuit court was not authorised to instruct the jury to allow them. If an unexplained erasure of an instrument, while in the possession of a person to be benefited thereby, is to be received as evidence of the destruction of the writing, surely a similar alteration of a deed, while in the possession of the party to be prejudiced by its destruction, must furnish a stronger inference or presumption against its validity. We do not now express any opinion respecting the authority of that case; but we maintain that the cross through the face of the bond, in this case, was evidence tending to shew that it had been cancelled or satisfied, and that the jury should have been instructed to regard it as presumptive evidence thereof. The Circuit Court decided correctly in permitting the instrument to go as evidence to the jury; and either party should have been allowed to explain the cir-

[a] Adams, 145.
[b] 4Am.Dig. 185.
[c] Minor'sR. 129.

cumstances under which the cross was made. If, however, no other evidence was introduced on either side, (as appears to have been the case,) it was the province of the jury to draw such inference from the circumstances as appeared to them rational and just, either in favor of, or against the validity of the demand.

But, for the defendants in error, it is further contended, that this matter of defence must have arisen subsequent to the commencement of the suit, and even after the pleas were filed ; and therefore the defence is not sustainable. On the contrary, it is insisted that the cancelling or crossing the bond while in the possession of the obligee, or his representatives, may be construed as an admission of an earlier payment, even before the issue was joined, or the suit commenced ; but that this is immaterial, for the defendant below was entitled, as a defence, to any satisfaction at any time before the trial. In support of this latter position, the case of *Baylies, et al.* v. *Fettyplace, et al.*[a] is cited. In that case, *Sedgwick,* J. who appears to have been sustained by the Court, held, that [a] 7 Mass. R. 334. " in all cases of *assumpsit,* whatever shews that a complete satisfaction has been received by the plaintiff *before the trial,* may be given in evidence under the general issue." He remarks further, " that before the decision of the case of *Birds* vs. *Randall,*[b] it [b] 3 Burr. 1345. might have been doubted, whether such a satisfaction could be given in evidence under the issue of *not guilty,* in an action for *a tort ;* but it ought never to have been a doubt, whether there was a distinction between those cases, where the satisfaction was made *before,* and those where it was made after the commencement of the suit. In the reason, nature, or

justice of the thing, there can be no such distinction."
The case of *Birds* vs. *Randall* appears to have been
an action for *a tort* committed by seducing the plain-
tiff's journeyman to leave his service. The trial was
had upon the general issue, when, on objections made,
the Court decided, "that a full satisfaction, *after* the
commencement of the action, and *before the trial,* need
not be pleaded, but might be given in evidence un-
der the general issue."

A decision of this Court may also be invoked in
aid of the same principle. The case of *McMillan* vs.
*Wallace,* was an action of *assumpsit,* for use and oc-
cupation. The pleas were the general issue, payment
and set-off. On error, the Court recognised as a gen-
eral rule, that no matter subsequent to the commence-
ment of the suit, can be given in evidence under the
general issue ; but sustained the position, as an ex-
ception to the rule, that evidence of subsequent, par-
tial payment, may be admitted. That the plaintiff,
however, in such case, is entitled to recover his costs
at least. And, as respects the objection, that the
plaintiff would be in danger of surprise from this
course, it was remarked, that this danger or inconve-
nience was not materially different from that to which
plaintiffs are often subject, under different circum-
stances ; and, should it so happen, the remedy must
be by an application for a new trial.

At present, we decline a farther investigation of
the doctrine, whether our former decision fixed a pro-
per standard of reduction, by evidence of subsequent
satisfaction—Whether the plaintiffs demand can only
be reduced so as to leave a balance in his favor to
carry costs, or whether by such defence his action can
be entirely defeated, as seems to be the doctrine of

the other cases referred to. A definite adjudication on this point is not essential to the decision of the present case.

It may be remarked that payment or satisfaction of a demand, pending a suit for it, can only be made, with the knowledge and consent of the plaintiff or his agent; and if he has consented to deprive himself of the evidence of his claim, or to destroy it, he has no just ground of complaint. The error we find in the record, is confined to the opinion of the Circuit Court, which instructed the jury, that the crossing the bond as described, "*was not sufficient evidence of canceling or payment,*" we think that was a matter of fact which they had a right to determine; and for which the judgment must be reversed, and the cause remanded.

Lipscomb, C. J. not sitting.